UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


MICHAEL L.,[1]

          Plaintiff,

   v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

          Defendant.

Case No. 3:18-cv-01115-YY

OPINION AND ORDER


YOU, Magistrate Judge:

     Michael L. ("plaintiff") seeks judicial review of the final decision by the Commissioner

of Social Security ("Commissioner") reducing his Title XVI Social Security Income ("SSI")

benefits under the Social Security Act ("Act").  This court has jurisdiction to review the

Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  The Commissioner's

decision is not supported by substantial evidence; therefore, it is REVERSED and REMANDED

for immediate recalculation and payment of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the non-governmental party or parties in this case.  Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member(s).

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI on October 9, 2015, alleging disability beginning July 8, 2013. Tr. 13. On May 7, 2016, the agency determined that plaintiff was disabled beginning August 14, 2015. Tr. 38. On June 27, 2016, plaintiff was notified that based on income he received in the form of in-kind support from August 2015 through June 2016, his payment amount was being reduced. Tr. 13. Plaintiff requested reconsideration, and on August 30, 2016, plaintiff was notified that he was entitled to SSI benefits beginning June 2013, but his payment amount was being reduced for in-kind support he received from June 2013 through August 2016.[2] Tr. 78-79, Plaintiff then filed a written request for a hearing. Tr. 13.

A hearing was held before an Administrative Law Judge ("ALJ") on February 9, 2017, at which plaintiff testified. Tr. 119-33. On March 9, 2017, the ALJ issued a decision finding that the reduction for in-kind support was accurate and correct. Tr. 13-16. After the Appeals Council denied his request for review, plaintiff filed a complaint in this court. Tr. 2-4. The ALJ's decision is therefore the Commissioner's final decision subject to review by this court. 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). The court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir.

---

[2] It is not clear from the record why plaintiff was entitled to begin receiving benefits as of June 2013, when he alleged his disability began in July 2013. It is also not clear why the reduction for in-kind support was initially scheduled to cease in June 2016, but was changed to August 2016.

2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  The court may not

substitute its judgment for that of the Commissioner when the evidence can reasonably support

either affirming or reversing the decision.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

Instead, where the evidence is susceptible to more than one rational interpretation, the

Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from

the record."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see

also Lingenfelter*, 504 F.3d at 1035.

## DISCUSSION

Plaintiff contends the ALJ erred in concluding that the in-kind support he received from

his mother did not constituted a bona fide loan.  Tr. 14.  The Social Security Act provides that a

disabled individual who does not have an eligible spouse and whose income does not exceed the

SSI income threshold shall be eligible to receive SSI.  42 U.S.C. § 1382(a)(1)(A).  The term

"income" means both earned and unearned income, and includes support and maintenance

furnished in cash or in kind.  42 U.S.C. § 1382a(a); 20 C.F.R. § 416.1120, *et seq.*

Money borrowed pursuant to a bona fide loan does not count as income.  20 C.F.R.

§ 416.1103(f); SSR 92-8p.  A bona fide loan is "an advance from lender to borrower that the

borrower must repay, with or without interest."  SSR 92-8p at *2.  "When money or an in-kind

advance in lieu of cash is given and accepted based on any understanding other than that it is to

be repaid by the receiver, there is no loan involved for SSI purposes."  *Id.* at *3.  A bona fide

loan agreement may be oral or written, but must be "recognized as enforceable under State

law."  *Id.* at *2.

The Agency's Program Operations Manual System ("POMS") specifies that a bona fide

loan must meet five criteria:  (1) it must be enforceable under state law; (2) it must have been in

effect at the time of the transaction; (3) it must acknowledge the obligation to repay; (4) it must establish a plan for repayment; and (5) repayment must be feasible. POMS SI 00835.482, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0500835482. If a loan meets these criteria, it is not treated as income for the purposes of SSI eligibility. The claimant bears the burden of demonstrating that the agreement constitutes a bona fide loan. SSR 92-8p.

Here, according to affidavits submitted by plaintiff and his mother, plaintiff has been residing with his mother in her home since 2007 and pays her $550 per month for rent and his share of the utilities. Tr. 53; Tr 55. Plaintiff stopped paying rent in February 2010 following a motor vehicle accident that caused him to stop working.[3] *Id.* Plaintiff's mother allowed plaintiff to remain in the home on the condition that he paid her back rent payments as soon as he was able to. *Id.* Between February 2010 and June 2016, plaintiff accumulated a total debt in back rent of $41,800. *Id.* Upon being awarded SSI benefits, plaintiff paid his mother $2,500,[4] leaving a balance of $39,300. *Id.* Plaintiff "intend[s] to pay the full $550.00/month going forward out of [his] monthly SSI payments." Tr. 54. He also intends to pay toward the loan with any additional SSI back payments he receives, as well as "pay some amount of the remainder of [his] SSI every month . . . to chip away at whatever remained of [his] debt. . . ." Tr. 53-54. At the hearing, plaintiff testified that he gives his mother his entire SSI monthly benefit check. Tr. 128. Plaintiff explained that his mother borrowed money to support them while he was waiting for SSI benefits, and that "she needs to be paid back the money instead of being in debt." *Id.*

---

[3] At the hearing, plaintiff explained that was in a head-on collision, due to a seizure and wasn't able to work." Tr. 128.

[4] It appears plaintiff was awarded $3,298.52 in back SSI payments for September 2015 through May 2016, Tr. 39, and $12,990.78 for June 2013 through August 2015, Tr. 84. However, back SSI payments are not paid in a lump sum but must be disbursed in installments. Tr. 39. Plaintiff received his first installment of $2,199.00 in June 2016. *Id.*

A field officer conducted an investigation regarding whether the agreement between plaintiff and his mother qualified as a bona fide loan. The field officer concluded that the loan was enforceable under state law, the agreement was in effect at the time of transaction, and there was an acknowledgement of the obligation to repay. Tr. 37. However, the field officer concluded that there was no plan for repayment and the repayment plan was not feasible. *Id.*

The ALJ concluded there was no bona fide loan. Tr. 14. The ALJ did not take issue with the field officer's findings that the loan was in effect at the time of the transaction and enforceable under state law. While the ALJ never explicitly disputed the field officer's finding that there was an acknowledgement of the obligation to repay, he apparently rejected it, finding instead that there "was no unconditional obligation for repayment at the time the in-kind support and maintenance was provided." Tr. 15.

The ALJ found there "was no unconditional obligation for repayment" because both plaintiff and his mother reported that he would pay her back when he was approved for benefits. Tr. 15. The ALJ, however, conflates the ability to repay with the obligation to repay. The POMS describe the "acknowledgement of an obligation to repay" as follows:

> A loan is an advance from a lender that the borrower must repay, with or without interest. For us to consider the [in-kind support and maintenance ("ISM")] as a bona fide loan, the ISM must be given and accepted based on the understanding that it is to be repaid by the borrower.
>
> The obligation to repay must be:
> • acknowledged by both the lender and the borrower; and
> • unconditional.

POMS SI 00835.482.B.3. Here, the fact that plaintiff was temporarily unable to pay did not discharge his obligation to repay. In fact, in their affidavits, both plaintiff and his mother avowed that they each understood plaintiff would continue to owe his mother whether or not he was awarded SSI benefits. Tr. 53, 55.

Despite the uncontroverted statements in these affidavits, the ALJ concluded that the affidavits "clearly suggest a conditional obligation to repay." Tr. 15. The ALJ focused on a statement by plaintiff that his mother agreed to let him stay in her home "on the condition" that he pay her back.[5] Tr. 15 (citing Tr. 53). While plaintiff's affidavit contains the word "condition," the ALJ misconstrues its use. The condition was not that plaintiff would pay his mother back only if he received SSI benefits, as the ALJ implies; rather, the condition was that plaintiff could continue living in her mobile home if he agreed to pay her back as soon as he had the means. Tr. 53.

The ALJ also found that the loan appeared to be conditional because, when the field investigator asked plaintiff when the loan would be repaid, plaintiff responded when his "mother is dead." Tr. 15 (citing Tr. 57). However, plaintiff made that statement in June 2016, at a time when his debt was increasing and he had no means to pay it down. Tr. 57. Plaintiff's benefits had just been reduced from $733 per month to $488 per month, which was not enough to pay his $550 rent, let alone repay his mother.[6] Tr. 96. While perhaps indelicate, plaintiff's statement accurately described the circumstances in existence at the time.

The ALJ further relied on the fact that plaintiff's mother stated she was not going to kick plaintiff out of the house due to his inability to pay. Tr. 15 (citing Tr. 37). Again, the ALJ conflates the ability to pay with the obligation to pay. The fact that plaintiff's mother was not going to throw plaintiff out on the street does not negate his obligation to repay the loan.

---

[5] Plaintiff attested: "My mother agreed to let me stay, on the condition that I pay her back the rent payments I could not make as soon as I was able to." Tr. 53.

[6] Plaintiff's benefits were subsequently increased back to the full $733 in September 2016. Tr. 125.

In the POMS, the Commissioner provides hypothetical examples for each of the five elements required to establish a bona fide loan. Example 3 relates to the obligation to repay and is instructive in this case:

> Ms. Smith applies for SSI in April 2010. She alleges that her brother provides her with food and shelter as a loan. When interviewed by the CR,[7] Ms. Smith and her brother both state that she must repay the loan of food and shelter whether or not Ms. Smith is found eligible for SSI. In this case, the CR determines that an obligation to repay exists because both parties confirmed that the obligation to repay is **not** contingent on whether Ms. Smith's financial circumstances improve.

POMS SI 00835.482.B.3 (emphasis in original) (footnote added). While not binding, the POMS and the examples contained therein constitute persuasive authority. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006) ("The POMS does not have the force of law, but it is persuasive authority."); *Evans v. Berryhill*, 6:16-cv-01692-SB, 2017 WL 3238236, at *7 (D. Or. Jul. 31, 2017) (relying on examples in the POMS). Here, consistent with Example 3, the sworn statements of both plaintiff and his mother reflect that the obligation to pay was not contingent on plaintiff's receipt of benefits. Thus, the ALJ erred in concluding that there was no acknowledgement of the obligation to repay.

Regarding the fourth factor, the ALJ found that "there was no clear plan or schedule for repayment." Tr. 15. Plaintiff reported that he "intended to pay the full $550.00/month going forward out of my monthly SSI payments," and that he "intended to pay some amount of the remainder of my SSI every month to my mother to chip away at whatever remained of my debt after my back payments were made." Tr. 54. The ALJ concluded that plaintiff's "statement that he would pay his mother back only to some future unspecific date when he was able to do so

---

[7] "The claims representative (CR) in the field office (FO) adjudicates title XVI claims and posteligibility (PE) actions[.]" POMS GN 03930.030 *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0203930030.

does not meet the agency's requirements that there be a clear plan or schedule for repayment." Tr. 15.

However, the POMS expressly states that anticipated SSI income can be used to establish a payment plan. POMS SI 00835.482.B.4 ("**IMPORTANT:** Anticipated income such as Title II, Title XVI, Veterans benefits, etc., may be used to establish a plan for a feasible repayment of the loan.") (emphasis in original). The POMS also states that the "repayment plan or schedule should state the value of the food or shelter, or both, that is being borrowed and the terms of repayment (e.g., how much will be repaid per week or per month, etc.)." *Id.* Here, plaintiff identified the "total debt," i.e., the "value of the food or shelter," as $41,800. Tr. 53. Plaintiff further testified that gave his mother the entirety of each of his SSI checks, i.e., $733. Tr. 128. As such, plaintiff's monthly repayment amount is $183 per month (plaintiff's monthly SSI payment of $733 minus plaintiff's ongoing rent and utility expenses of $550). Tr. 99. Therefore, the loan agreement includes a plan for repayment.

The Commissioner argues that there is no plan for repayment because there has never been any agreement as to when plaintiff would start repaying the loan. Def. Br. 4, ECF #15. However, it is clear that a repayment plan based on anticipated income would, by its nature, result in an unspecified date for beginning repayment. And the POMS makes clear that anticipated income may be used to establish a repayment plan. Therefore, the fact that plaintiff and his mother agreed to a repayment plan that would begin upon his receipt of anticipated SSI income is not a proper basis for determining there was no repayment plan.

The ALJ did not address the fifth factor, i.e., whether the plan is feasible. However, the field officer found the plan is not feasible, Tr. 37, and the ALJ found that the field officer's findings were proper. Tr. 14.

Regarding the fifth factor, the POMS explains that the "case facts must show that the individual can repay the loan using his or her own resources and income." POMS SI 00835.482.B.5. Example 1 describes a feasible loan repayment plan based on anticipated benefits, which mirrors the circumstances of plaintiff's case:

> Mr. Thomas applies for SSI disability benefits and the facts of his case are:
>
> • 05/10/2010 - Mr. Thomas applies for SSI disability benefits. He alleges that his brother provides him with food and shelter as a loan.
>
> • During the interview, Mr. Thomas and his brother both state that the loan of food and shelter must be repaid whether or not Mr. Thomas is found eligible for SSI.
>
> • Prior to completing the SSI application Mr. Thomas states if approved he hopes to use his SSI benefits to repay the loan.
>
> The CR determines that:
>
> • the obligation to repay was established because both parties confirmed that repayment was not dependent on whether Mr. Thomas's financial situation improved, and
>
> • the repayment plan is feasible because Mr. Thomas intends to use anticipated SSI benefits to pay back the loan.

*Id.* This example, which aligns with the facts of plaintiff's case, demonstrates that plaintiff's repayment plan is feasible.

The POMS also indicates that the factors to be considered in determining feasibility include the amount of the loan, the individual's income, and the individual's monthly living expenses. *Id.* Example 2 applies those factors and describes a situation in which repayment would not be feasible:

> Mr. Applewhite applies for SSI in January 2010 and alleges that he has no income or resources. He lives with his sister, who provides him with food and shelter with a value (pro rata share) of $825 per month. He alleges that he has a loan of ISM agreement with his sister. The repayment plan states that Mr. Applewhite will repay the loan by:

> • making monthly payments of $20 from his anticipated monthly $674 SSI check. . .

> The CR correctly determines:

> • Mr. Applewhite's repayment plan is not feasible because his SSI check amount is not sufficient to pay his pro rata share of current household operating expenses ($825)

*Id.* In Example 2, the claimant's SSI income is not sufficient to pay his current expenses—rather than paying down the debt, the claimant is incurring further debt. That is not the case here—plaintiff is receiving $733 in benefits per month and his rent and utilities are only $550. Based on the rate that plaintiff is repaying the loan, at $183 per month, it will take him more than 17 years to satisfy the debt.[8] Nevertheless, there is nothing in the POMS indicating repayment of a loan is not feasible because it will take 17 years to repay. A 17-year repayment plan for a debt is no less feasible than a 15- or 30-year mortgage.

Moreover, it is arguable that any in-kind support plaintiff received from his mother is relevant only for the period that he was eligible for SSI benefits beginning in June 2013. Tr. 78-79. Plaintiff's debt to his mother started accruing as of February 2010, Tr. 53, and he accrued 40 months of debt—equaling $22,000—prior to being eligible for SSI benefits. Arguably, the court should consider only the remaining $17,300, which constitutes the in-kind support plaintiff received after being eligible for SSI benefits. Plaintiff would be able to pay back $17,300 in less than eight years.[9] In any event, whether the court factors in the pre-existing debt or not, neither an eight-year nor a 17-year repayment plan is infeasible due to the length of time required for repayment.

---

[8] $39,300 / $183 per month = 210 months.

[9] $17,300 / $183 per month = 92 months.

In sum, plaintiff met his burden of establishing the existence of a bona fide loan, and the ALJ erred in concluding otherwise.

## CONCLUSION

The decision of the Commissioner is REVERSED and REMANDED for immediate recalculation and payment of benefits.

DATED August 23, 2019.

 /s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge